Stephen A. Crane, Esq. (*pro hac vice pending*)
Michigan Bar No.: P52790
Texas Bar No.: 24110643
CRANE LAW PLLC
7 West Square Lake Road
Bloomfield Hills, Michigan 48302
Phone: 248.963.6300
Fax: 248.928.2286
stevecranejr@gmail.com

Emmanuel Rayes, Esq. (*pro hac vice pending*)
Michigan Bar No.: P85103
California Bar No.: 304934
RAYES LAW PLLC
1450 2nd St.
Santa Monica, CA 90401
Phone: 818.321.8568
Fax: 586.261.5256
emmanuel.rayes@gmail.com

*Attorneys for Plaintiffs Core Holdings LLC
Vault Logic, Inc., Core Software LLC,
and Capital Hero, Inc.*

**UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
PHOENIX DIVISION**

| | |
|---|---|
| **CORE HOLDINGS LLC; VAULT LOGIC, INC; CORE SOFTWARE LLC; AND CAPITAL HERO, INC.,** )<br><br>**Plaintiffs,** )<br><br>**v.** )<br><br>**TIM ROCHO,** )<br><br>**Defendant.** ) | **Case No.**<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF FIDUCIARY DUTY;**<br><br>2. **ABUSE OF CONTROL;**<br><br>3. **CORPORATE WASTE;**<br><br>4. **BREACH OF CONTRACT/ IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;** |

COMPLAINT                                                                1

1  )
2  )
3  )
4  )
5  )
6  )
7  )
8  )
9  )
10 )
11 )
12 )

5.  NEGLIGENT
    MISREPRESENTATION;
6.  FRAUD;
7.  CONSTRUCTIVE FRAUD;
8.  CONVERSION;
9.  NEGLIGENCE;
10. GROSS NEGLIGENCE;
11. UNJUST ENRICHMENT;
    AND
12. REQUEST FOR
    INJUNCTION.

**JURY TRIAL DEMANDED**

1

## **TABLE OF CONTENTS**

2

**I.   PARTIES**.................................................................................................... 4

3

**II.  JURISDICTION AND VENUE** ................................................................ 6

4

**III. OVERVIEW OF WRONGDOING** ........................................................... 7

5

**IV. FACTS COMMON TO ALL CAUSES OF ACTION** .............................. 10

6

   A.  AS CEO OF VAULT LOGIC, DEFENDANT ROCHO DIVIDED VAULT
   LOGIC INTO FOUR SEPARATE CORPORATE ENTITIES ...................... 10

7

   B.  THE MATTERFI DEVELOPMENT TEAM ....................................... 12

8

   C.  DEFENDANT ROCHO'S CONCURRENT CONFLICT OF INTEREST,
9  WHEREIN MATTERFI WITH ESSENTIAL FUNDING FROM CORE
   HOLDINGS AND WITH DEFENDANT'S ASSISTANCE, FORMED AS A
10 SEPARATE COMPANY FROM CORE HOLDINGS ................................... 15

11    D.  DEFENDANT ROCHO'S BLATANT SELF-DEALING ........................ 19

12 **V.  CAUSES OF ACTION** .............................................................................. 20

13    1.   BREACH OF FIDUCIARY DUTY ................................................. 20

14    2.   ABUSE OF CONTROL ................................................................ 24

15    3.   CORPORATE WASTE ................................................................ 25

16    4.   BREACH OF CONTRACT/IMPLIED COVENANT OF GOOD FAITH
      AND FAIR DEALING ...................................................................... 26

17    5.   NEGLIGENT MISREPRESENTATION .......................................... 28

18    6.   FRAUD ..................................................................................... 29

19    7.   CONSTRUCTIVE FRAUD ........................................................... 30

20    8.   CONVERSION ........................................................................... 31

21    9.   NEGLIGENCE ........................................................................... 31

      10.  GROSS NEGLIGENCE ............................................................... 32
22
      11.  UNJUST ENRICHMENT ............................................................. 33
23
      12.  REQUEST FOR INJUNCTION ..................................................... 35
24
**PUNITIVE DAMAGES**................................................................................. 36
25
**PRAYER FOR RELIEF** ............................................................................... 37
26
**JURY TRIAL DEMAND** .............................................................................. 39

27

28

COME NOW Plaintiffs in the above-entitled matter, by and through their

attorneys, Stephen A. Crane Jr., Crane Law PLLC, and Emmanuel Rayes, Rayes

Law PLLC, and for the several causes of action set forth against Defendant named

above, state and allege as follows:

## I.    PARTIES

1.    Plaintiff Core Holdings LLC ("CORE HOLDINGS"), is a Wyoming

limited liability corporation, located at City of Cheyanne, County of Laramie,

State of Wyoming.

2.    Plaintiff Vault Logic, Inc. ("VAULT LOGIC"), is a Delaware

corporation with its registered address located at 3133 W. Frye Rd., Ste. 101

Chandler, Arizona 85226.

3.    Plaintiff Core Software LLC ("CORE SOFTWARE"), is a Wyoming

limited liability corporation, located at City of Cheyanne, County of Laramie,

State of Wyoming.

4.    Plaintiff Capital Hero, Inc. ("CAPITAL HERO"), is a Delaware

corporation with its registered address located at 8 The Green Ste. A, Dover, DE

19901.

5.    CORE HOLDINGS is the holding company for VAULT LOGIC,

CORE SOFTWARE, and CAPITAL HERO (hereinafter "wholly owned

subsidiaries").

6.      Defendant Tim Rocho (hereinafter "Rocho" or "Defendant Rocho"), is the former CEO of CORE HOLDINGS.

7.      Defendant Rocho is the former CEO of VAULT LOGIC.

8.      Defendant Rocho is the former CEO of CORE SOFTWARE.

9.      Defendant Rocho is the former CEO of CAPITAL HERO.

10.     Defendant Rocho, resides in the City of Mesa, County of Maricopa, State of Arizona.

11.     Third-Party MatterFi, Inc. ("MATTERFI") is a Wyoming corporation that develops technology, software applications and mobile applications for cryptocurrency money services businesses, as well as licenses intellectual property to various money services businesses.

12.     Defendant Rocho served as an officer of CORE HOLDINGS and as an officer of Third-Party MATTERFI, concurrently.

13.     Defendant Rocho served as an officer of VAULT LOGIC and as an officer of Third-Party MATTERFI, concurrently.

14.     Defendant Rocho served as an officer of CORE SOFTWARE and as an officer of Third-Party MATTERFI, concurrently.

15.     Defendant Rocho served as an officer of CAPITAL HERO and as an officer of Third-Party MATTERFI, concurrently.

## II.   JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction over this dispute under Article III of the United States Constitution and 28 U.S.C. §1332 because Plaintiffs VAULT LOGIC and CAPITAL HERO are incorporated in the State of Delaware, and Plaintiffs CORE HOLDINGS and CORE SOFTWARE are incorporated in the State of Wyoming, whereas Defendant Rocho resides in other states, and the amount in controversy exceeds the jurisdictional minimum of this Court.

17.    This Court has personal jurisdiction over the Defendant Rocho because events complained of herein occurred in, or arose from, transactions and conduct occurring in whole or in part in Maricopa County, Arizona.

18.    Defendant Rocho has sufficient contacts with Arizona because he resides there and conducted substantial business in Arizona while acting as CEO of CORE HOLDINGS, VAULT LOGIC, CORE SOFTWARE and CAPITAL HERO.

19.    Defendant Rocho has sufficient contacts with the State of Arizona while acting as CEO of CORE HOLDINGS, VAULT LOGIC, CORE SOFTWARE and CAPITAL HERO.to make proper the exercise of personal jurisdiction over him.

20.     Defendant Rocho has significant minimum contacts with this Court to render the exercise of jurisdiction by this Court permissible under the traditional notion of fair play and substantial justice.

21.     Venue is proper in this Court pursuant to A.R.S. §12-401. A substantial part of the events or omissions giving rise to the claims alleged herein occurred in the District of Arizona. VAULT LOGIC filed Arizona tax returns and has a main business address in Chandler, Arizona which is within this District. In addition, CORE HOLDINGS was granted an extension to file its tax returns and plans to file within this District. Defendant Rocho conducted business operations and/or resides in the District, rendering venue in this District proper.

### III.     <u>OVERVIEW OF WRONGDOING</u>

22.     Plaintiffs bring this lawsuit to prevent the blatant improper self-dealing, gross mismanagement, breaches of fiduciary duty and other willful misconduct committed by Defendant Rocho while acting as CEO of CORE HOLDINGS, and its wholly owned subsidiaries.

23.     Defendant Rocho received a substantial amount of common stock as a founder in Third-Party MATTERFI without fully disclosing this information to the Directors of CORE HOLDINGS, and its wholly owned subsidiaries.

24.     Defendant Rocho, during his time as acting CEO of CORE HOLDINGS, and its wholly owned subsidiaries and CEO of Third-Party MATTERFI concurrently, operated CORE HOLDINGS, and its wholly owned

subsidiaries at a net loss, while Third-Party MATTERFI was gaining market value

and capital.

25.     Defendant Rocho, during his time as acting CEO of CORE

HOLDINGS, and its wholly owned subsidiaries, used the resources of CORE

HOLDINGS, and its wholly owned subsidiaries, to unjustly enrich himself to the

detriment of CORE HOLDINGS, and its wholly owned subsidiaries.

26.     During his time as CEO of CORE HOLDINGS, and its wholly

owned subsidiaries, and Third-Party MATTERFI, Defendant Rocho had a

property interest in MATTERFI.

27.     Defendant Rocho's entire property interest in Third-Party

MATTERFI was concealed from CORE HOLDINGS, and its wholly owned

subsidiaries.

28.     Defendant Rocho held the position of CEO of CORE HOLDINGS

and Third-Party MATTERFI contemporaneously thereby creating an inherent

and/or concurrent conflict of interest.

29.     Defendant Rocho held the position of CEO of VAULT LOGIC and

Third-Party MATTERFI contemporaneously thereby creating an inherent and/or

concurrent conflict of interest.

30.     Defendant Rocho held the position of CEO of CORE SOFTWARE

and Third-Party MATTERFI contemporaneously thereby creating an inherent

and/or concurrent conflict of interest.

31.     Defendant Rocho held the position of CEO of CAPITAL HERO and Third-Party MATTERFI contemporaneously thereby creating an inherent and/or concurrent conflict of interest.

32.     The inherent and/or concurrent conflict of interest resulted in substantial damages to CORE HOLDINGS, VAULT LOGIC, CORE SOFTWARE and CAPITAL HERO.

33.     The inherent and/or concurrent conflict of interest resulted in substantial financial benefits to Defendant Rocho.

34.     After the discovery of Defendant Rocho's *inter alia* self-dealing and breach of fiduciary duty, Defendant Rocho was terminated as CEO of CORE HOLDINGS.

35.     After the discovery of Defendant Rocho's *inter alia* self-dealing and breach of fiduciary duty, Defendant Rocho was terminated as CEO of VAULT LOGIC.

36.     After the discovery of Defendant Rocho's *inter alia* self-dealing and breach of fiduciary duty, Defendant Rocho was terminated as CEO of CORE SOFTWARE.

37.     After the discovery of Defendant Rocho's *inter alia* self-dealing and breach of fiduciary duty, Defendant Rocho was terminated as CEO of CAPITAL HERO.

**IV.   FACTS COMMON TO ALL CAUSES OF ACTION**

38.     VAULT LOGIC is a company that was formed for the purpose of manufacturing and dispensing multi-use Bitcoin automatic teller machines ("BTM"), and provide hardware and software for those BTM's and related items by developing technology and software for cryptocurrency applications within BTM's and other money service platforms.

39.     On October 3, 2017, VAULT LOGIC was incorporated as a Delaware corporation.

40.     In or about 2019, Defendant Rocho was hired as CEO of VAULT LOGIC.

**A. AS CEO OF VAULT LOGIC, DEFENDANT ROCHO DIVIDED VAULT LOGIC INTO FOUR SEPARATE CORPORATE ENTITIES**

41.     As one of his first acts as CEO, Defendant Rocho divided VAULT LOGIC into four separate corporate entities:

a.   CORE HOLDINGS is the holding company for the entities VAULT LOGIC, CORE SOFTWARE and CAPITAL HERO.

b.   VAULT LOGIC manufactures bitcoin automatic teller machines ("BTM") and sells the BTMs deployers and distributors in the cryptocurrency space. VAULT LOGIC distributes and places BTMs directly and receives revenue from BTM sales to deployers and locations. VAULT LOGIC has value as a manufacturer holding BTM intellectual property and inventory.

c. CORE SOFTWARE develops software, mobile applications for VAULT LOGIC's products and other cryptocurrency and money services businesses. CORE SOFTWARE holds the software intellectual property and licenses this proprietary software to CAPITAL HERO and revenue is generated through licensing fees and software development contracts. CORE SOFTWARE has stand-alone value in the intellectual property, licensing fees and as a software development house.

d. CAPITAL HERO is a company that performs money services and money transmission as well as administering anti-money laundering compliance for the BTMs. CAPITAL HERO acquires licensing from CORE SOFTWARE and then sub-licenses this software to deployers. CAPITAL HERO receives recurring revenue from license fees and has stand-alone value based on fee revenue and bank relationships.

42. As CEO, Defendant Rocho had full control of CORE HOLDINGS, and its wholly owned subsidiaries.

## B. THE MATTERFI DEVELOPMENT TEAM

43.     In or about September 2020, as CEO of CORE HOLDINGS and CORE SOFTWARE, Defendant Rocho employed and directed a "development team," later to be known and incorporated as MATTERFI.

44.     Defendant Rocho employed and directed the MATTERFI "development team" to design a software and hardware cryptocurrency wallet that would be used in the BTMs to store various types of cryptocurrencies.

45.     The MATTERFI development team and CORE SOFTWARE performed and continues to perform the same functions developing software and hardware technologies for money service businesses and licensing this technology to others.

46.     In light the market segment in which they compete, third-party MATTERFI and CORE SOFTWARE are competitors.

47.     CORE HOLDINGS Operating Agreement Section 6.07 states:

> Officers of the Company shall devote
> such time and efforts as necessary and
> appropriate to fulfill their duties and shall
> not engage in any activities, on behalf of
> the Company or otherwise, that are
> competitive with the activities or potential
> activities of the Company.

48.     Upon information and belief, third-party MATTERFI had not been formed as a separate company from CORE HOLDINGS and was 100% controlled by CORE HOLDINGS.

49.     CORE HOLDINGS, or one of its wholly owned subsidiaries, paid Third-Party MATTERFI's in whole or in part operating expenses.

50.     Upon information and belief, CORE HOLDINGS, or one or more of its wholly owned subsidiaries, continues to pay a portion of Third-Party MATTERFI's operating expenses

51.     Upon information and belief, the MATTERFI arrangement with CORE HOLDINGS, or one or more of its wholly owned subsidiaries, that Defendant Rocho sought and approved went against the advice of Counsel.

52.     Counsel was retained by CORE HOLDINGS, or one or more of its wholly owned subsidiaries, with Defendant Rocho's approval to conduct due diligence regarding employing the MATTERFI development team to develop a cryptocurrency software and hardware wallet.

53.     Counsel presented his mental impressions, opinions, and conclusion to Defendant Rocho.

54.     In rendering his mental impressions, opinions, and conclusion to Defendant Rocho, Counsel questioned the arrangement with MATTERFI. Among other things, Counsel advised Defendant Rocho that he concerned such an arrangement would fail to meet the initial goals of CORE HOLDINGS, and its wholly owned subsidiaries. Those goals included: fast to deploy a cryptocurrency software and hardware wallet; a technology leap; and minimize expenses.

55.     Counsel questioned the need for the cryptocurrency software and hardware wallet that MATTERFI development team was developing because such

software and hardware, at the time, could have been built by CORE HOLDINGS in a significantly lesser time, at a significantly reduced cost and without debt. In addition, CORE HOLDINGS could have developed the software and hardware on its own from scratch and have it fully tested within months from their start of development. Counsel asserted that it would take at least one year for deployment by the MATTERFI development of an operation and secure wallet, which went against CORE HOLDINGS' initial goal of fast deployment.

56.     Disregarding counsel's mental impressions, opinions, conclusions and due diligence, Defendant Rocho tasked the MATTERFI development team to create a cryptocurrency software and hardware wallet for CORE HOLDINGS, and its wholly owned subsidiaries.

57.     Defendant Rocho moved forward with the MATTERFI development team against Counsel's advice because it was it more beneficial to his personal interest.

58.     In moving forward with the MATTERFI development team, Defendant Rocho failed to secure for CORE HOLDINGS', and its wholly owned subsidiaries', the benefit of the technology and intellectual property rights Third-Party MATTERFI was tasked by Defendant Rocho to develop.

59.     Defendant Rocho's failure to secure the property rights of the software and hardware that the MATTERFI team was developing constitutes a breach of the CORE HOLDINGS Operating Agreement Section 9.03(a) & (b)(See Exhibit A).

**COMPLAINT**                                                                                    14

60.   CORE HOLDINGS Operating Agreement Section 9.03(a) states:

> Each Member who provides services to
> the Company acknowledges and agrees
> that all right, title, and interest in and to
> all Work Product as well as any
> Intellectual Property Rights therein and
> all improvements thereto shall be the sole
> and exclusive property of the Company.

61.   CORE HOLDINGS Operating Agreement Section 9.03(b) states:

> Each Member whom provides services
> to the Company acknowledges that, by
> reason of being a Member, to the extent
> permitted by law, all Work Product
> consisting of copyrightable subject
> matter is "work made for hire" as
> defined in the Copyright Act of 1976
> (17 U.S.C. §101), and such copyrights
> are therefore owned by the Company.

**C. DEFENDANT ROCHO'S CONCURRENT CONFLICT OF
INTEREST, WHEREIN MATTERFI WITH ESSENTIAL
FUNDING FROM CORE HOLDINGS AND WITH
DEFENDANT'S ASSISTANCE, FORMED AS A
SEPARATE COMPANY FROM CORE HOLDINGS**

62.   On November 6, 2020, Third-Party MATTERFI was formed as a
Wyoming corporation.

63.   Defendant Rocho was listed as the CEO of Third-Party MATTERFI.

64.   While acting CEO of CORE SOFTWARE, Defendant Rocho
secured funding from CORE SOFTWARE for the MATTERFI development team
to develop software that would be used by CORE SOFTWARE.

65.   CORE SOFTWARE was the initial investor in Third-Party
MATTERFI in the amount of $100,000.

66.     All transfers of capital for CORE SOFTWARE investment into Third-Party MATTERFI came from Plaintiff CORE HOLDINGS, and its wholly owned subsidiaries, specifically by way of VAULT LOGIC's bank account.

67.     On August 10, 2020, Defendant Rocho was issued 180,000 common voting units of CORE HOLDINGS through an equity incentive plan issued by the Manager of CORE HOLDINGS.

68.     The initial $100,000 investment from CORE SOFTWARE to Third-Party MATTERFI paid for operational expenses, salaries, attorney fees, and patent and trademark fees among other things.

69.     The $100,000 investment from CORE SOFTWARE to Third-Party MATTERFI was distributed as early as November 2020.

70.     In or about December 2020, Defendant Rocho retained full control of Third-Party MATTERFI's financial account(s) and used Third-Party MATTERFI's funds for personal expenditures.

71.     Defendant Rocho's personal expenditures from Third-Party MATTERFI's financial account(s) were paid by Plaintiff CORE HOLDINGS without CORE HOLDINGS' knowledge or consent.

72.     On December 18, 2020, Third-Party MATTERFI and CORE SOFTWARE entered into an agreement labeled "MatterFi White Label Crypto Processing System Agreement" ("White Label Agreement").

73.     Under the terms of the White Label Agreement, Third-Party MATTERFI developed a "plug and play" crypto processing system that would be licensed to CORE SOFTWARE for a purchase price of $120,000.

74.     In or about January 2021, Defendant Rocho directed the controller of Third-Party MATTERFI to pay him a salary of $3,750 per month, which was not disclosed to Plaintiff CORE HOLDINGS.

75.     Upon information and belief, Defendant Rocho directed the Chief Financial Officer of CORE HOLDLINGS to pay him a salary from VAULT LOGIC'S bank account.

76.     The payment of Defendant Rocho's salary out of VAULT LOGIC'S bank account was done unbeknownst the VAULT LOGIC'S director.

77.     On February 10, 2021, Defendant Rocho called the controller of Third-Party MATTERFI to negotiate his stock option plan. During call with Third-Party MATTERFI's controller, Defendant Rocho alluded to have been drinking and was noticeably intoxicated. Defendant Rocho sought to acquire 4.25% of Third-Party MATTERFI through an upcoming Equity Incentive Plan and 3.25% of Third-Party MATTERFI immediately as founders stock that vested on the same accelerated schedule as the controller or 50% right away.

78.     Defendant Rocho made this decision as CEO of CORE HOLDINGS and CEO of Third-Party MATTERFI, while intoxicated.

79.     Upon information and belief, Defendant Rocho did not follow through with his directive to Third-Party MATTERFI's controller because he was too intoxicated to remember to.

80.     Defendant Rocho would contact vendors while intoxicated. Defendant Rocho was so intoxicated attending an industry event that at the end of the evening he had to be wheelchaired through to the hotel to his room.

81.     In or about March 2021, Defendant Rocho was demoted from CEO to President of Third-Party MATTERFI.

82.     On April 4, 2021, according to Third-Party MATTERFI organizational minutes, Defendant Rocho was appointed to the Board of Directors of Third-Party MATTERFI and Defendant Rocho was named President of Third-Party MATTERFI.

83.     On April 4, 2021, according to Third-Party MATTERFI organizational minutes, Defendant Rocho was issued founder stock in the amount of 2,248,498 Class "A" Common Stock and 6,664,000 Matter Tokens, without disclosing his interest in Third-Party MATTERFI to the Manager of CORE HOLDINGS.

84.     Furthermore, Defendant Rocho received 1,339,000 Rune Shares which equated to an additional 267,800 Class "A" Common Stock of Third-Party MATTERFI and 793,475 Matter Tokens, without disclosing his interest in Third-Party MATTERFI to the Manager of CORE HOLDINGS.

85.     In total, Defendant Rocho acquired 18.64% fully diluted Class "A" Common Stock in Third-Party MATTERFI whereas CORE HOLDINGS, and its wholly owned subsidiaries, specifically CORE SOFTWARE, received 7.5% fully diluted Class "A" Common Stock in Third-Party MATTERFI.

### D. DEFENDANT ROCHO'S BLATANT SELF-DEALING

86.     Under this complaint, Plaintiffs allege that Defendant Rocho knowingly or recklessly violated his fiduciary duties, including duties of loyalty, good faith and independence owned to Plaintiffs.

87.     Defendant Rocho received an interest in Third-Party MATTERFI without the knowledge, approval, or consent of CORE HOLDINGS.

88.     In other words, Defendant Rocho failed to fully disclose his interest in Third-Party MATTERFI to CORE HOLDINGS, nor did Defendant Rocho receive informed consent from CORE HOLDINGS for his interest.

89.     Once CORE HOLDINGS became aware of Defendant Rocho's interest in Third-Party MATTERFI, the manager of CORE HOLDINGS objected.

90.     Upon information and belief, Defendant Rocho received founders stock in Third-Party MATTERFI and was being appointed its President and board member because Defendant secured the initial funding from CORE HOLDINGS for Third-Party MATTERFI.

91.     On May 12, 2021, MATTERFI's board of directors, approved by unanimous written consent, a Class "A" Common Stock Purchase Agreement between MATTERFI and Plaintiff CORE SOFTWARE.

92.     Pursuant to the board's approval of the Class "A" Common Stock Purchase Agreement, MATTERFI issued 1,012,412 of Class A voting stock for the price of $100,000 to Plaintiff CORE SOFTWARE.

93.     On June 16, 2021, Defendant Rocho signed the Class "A" Common Stock Purchase Agreement on behalf of CORE SOFTWARE using a MATTERFI email address.

94.     In or about July 2021, Third-Party MATTERFI had a market value of $20,000,000 (USD).

95.     In or about August 2021, Defendant Rocho was fired from his employment with Third-Party MATTERFI.

96.     In or about September 2021, Defendant Rocho was fired from his employment with CORE HOLDINGS, and its wholly owned subsidiaries.

97.     Defendant Rocho's acts and actions as CEO of CORE HOLDINGS, VAULT LOGIC, CORE SOFTWARE and CAPITAL HERO resulted in substantial damages to CORE HOLDINGS, and its wholly owned subsidiaries, in an amount more than $3,000,000.00.

## V.     CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

#### 1.   BREACH OF FIDUCIARY DUTY

98.     Plaintiffs incorporate each paragraph above into this claim.

99.     Defendant Rocho is sued under this cause of action because he owed a fiduciary duty to Plaintiffs either as a matter of corporate law or as a matter of contract and agency law.

100.    As an Officer of CORE HOLDINGS, Defendant Rocho owed fiduciary duties of care, loyalty, and good faith to CORE HOLDINGS and its stockholders.

101.    Defendant Rocho's fiduciary duties included obligations to exercise good business judgment, to act prudently in the operation of CORE HOLDINGS's business, to discharge his actions in good faith, to act in the best interests of CORE HOLDINGS and its stockholders, and to put the interest of CORE HOLDINGS before his own.

102.    Pursuant to CORE HOLDINGS's Operating Agreement (See Exhibit A), Defendant Rocho specifically had a fiduciary duty to CORE HOLDINGS and its shareholders, including a specific fiduciary duty to supervise the relationship of CORE HOLDINGS and Third-Party MATTERFI.

103.    In or around 2019, Defendant Rocho was hired as CEO of CORE HOLDINGS, and its wholly owned subsidiaries.

104.    Beginning with Defendant Rocho's employment as CORE HOLDINGS CEO, Defendant Rocho was responsible for managing CORE HOLDINGS, and its wholly owned subsidiaries, in a profitable fashion and developing the software necessary to bring CORE HOLDINGS, and its wholly owned subsidiaries, to market.

105.   A CEO owes a special duty to its company, which is called a fiduciary duty or duty of loyalty. Further as an officer of its principal, a CEO stands in a position of trust, which also creates a fiduciary duty.

106.   This duty requires the CEO to deal in the utmost good faith on behalf of the client and fully disclose all material facts that may affect the company adversely.

107.   Defendant Rocho owed CORE HOLDINGS, and its wholly owned subsidiaries, the highest obligation of good faith and loyalty in the administration of the affairs of CORE HOLDINGS, and its wholly owned subsidiaries, including the due diligence done regarding any fundamental corporate decisions made by CORE HOLDINGS, and its wholly owned subsidiaries.

108.   Defendant Rocho breached this duty by among other things:

   a.   Misappropriating common stock in Third-Party MATTERFI;

   b.   Disclosing confidential information to Third-Party MATTERFI and other third parties;

   c.   Intentionally misleading CORE HOLDINGS and its directors;

   d.   Lying or committing other acts of dishonesty to CORE HOLDINGS;

   e.   Defrauding CORE HOLDINGS and concealing material information by failing to make full disclosure to CORE HOLDINGS of his interest in Third-Party MATTERFI; and

f.  Going against the due diligence performed by and opinion of Counsel in pursuing the arrangement with the MATTERFI development team.

109.   Defendant Rocho violated his duty of care because he approved the initial investment in Third-Party MATTERFI by CORE HOLDINGS for $100,000, and in return CORE HOLDINGS received approximately 7.5% Class "A" Common Stock fully diluted as an initial investor, while Defendant received approximately 18.64% of Third-Party MATTERFI Class "A" Common Stock fully diluted as a founder.

110.   Defendant Rocho failed to disclose his interest in Third-Party MATTERFI. His interest was in the form of 18.64% of MATTERFI founders' stock.

111.   Defendant Rocho's interest in Third-Party MATTERFI was discovered by directors of CORE HOLDINGS after CORE HOLDINGS' initial $100,000 investment in Third-Party MATTERFI was made.

112.   Defendant Rocho conducted due diligence. However, he ignored the professional's recommendation of Counsel. Instead, Defendant Rocho made the decision based on his self-interest and not the interest of the shareholders of CORE HOLDINGS, and its wholly owned subsidiaries.

113.   Defendant Rocho's breach caused Plaintiffs to be damaged in an amount to be proven at trial, in an amount more than $100,000.00 not including attorney fees, interest and other costs.

**SECOND CLAIM FOR RELIEF**

**2.  ABUSE OF CONTROL**

114.    Plaintiff incorporates each paragraph above into this claim.

115.    By virtue of his position as CEO of CORE HOLDINGS, and its wholly owned subsidiaries, Defendant Rocho exercised control over the operations of CORE HOLDINGS, and its wholly owned subsidiaries, and owed duties as controlling person to CORE HOLDINGS, and its wholly owned subsidiaries, not to use his position of control within CORE HOLDINGS and its wholly owned subsidiaries for his personal interest and contrary to the interest of CORE HOLDINGS, and its wholly owned subsidiaries.

116.    Defendant Rocho's conduct amounts to an abuse of his control of CORE HOLDINGS, and its wholly owned subsidiaries, in violation of his obligations owing to both CORE HOLDINGS and its wholly owned subsidiaries.

117.    Defendant Rocho put his own pecuniary interest ahead of that of CORE HOLDINGS, and its wholly owned subsidiaries.

118.    Defendant Rocho abused his control of CORE HOLDINGS, and its wholly owned subsidiaries, by putting his self-interest ahead of the best interest CORE HOLDINGS and its wholly owned subsidiaries.

119.    As a result of Defendant Rocho's abuse of control, CORE HOLDINGS, and its wholly owned subsidiaries, has sustained and will continue to sustain damages and injuries for which it has no adequate remedy at law, including but not limited to the damages resulting from the decision by the management of

**COMPLAINT**

CORE HOLDINGS, and its wholly owned subsidiaries, to make the initial investment in Third-Party MATTERFI, which was based in whole or in part on Defendant Rocho's advice and/or direction.

120.    The acts of Defendant Rocho were done maliciously, oppressively, and with intent to defraud and Plaintiffs are entitled to punitive and exemplary damages in an amount to be shown according to proof at the time of trial, in an amount more than $100,000.00 not including attorney fees, interest and other costs.

## THIRD CLAIM FOR RELIEF
### 3.   CORPORATE WASTE

121.    Plaintiff incorporates each paragraph above into this claim.

122.    As alleged in detail herein, Defendant Rocho had a fiduciary duty to exercise good faith and diligence in the administration of the affairs of CORE HOLDINGS, and its wholly owned subsidiaries, and in the use and preservation of its property and assets, and the highest obligation of fair dealing.

123.    Defendant Rocho wasted CORE HOLDINGS', and its wholly owned subsidiaries', corporate assets by failing to conduct proper due diligence regarding the investment in MATTERFI.

124.    Defendant Rocho decided to waste corporate resources by acquiring a substantial amount of founders stock in Third-Party MATTERFI without fully disclosing to the management of CORE HOLDINGS, and its wholly owned

subsidiaries, to the detriment of CORE HOLDINGS and its shareholders, while

acting as CEO of CORE HOLDINGS, and its wholly owned subsidiaries.

125.    Defendant Rocho wasted corporate assets by paying improper

compensation and bonuses to himself after breaching his fiduciary duty as CEO of

CORE HOLDINGS by acquiring founders stock in Third-Party MATTERFI and

paying himself a salary as Third-Party MATTERFI's CEO, both unbeknownst to

the management of CORE HOLDINGS, and unbeknownst to its wholly owned

subsidiaries.

126.    As a result of Defendant Rocho's wrongful conduct, CORE

HOLDINGS, and its wholly owned subsidiaries, have suffered and continues to

suffer economic and non-economic losses, all in an amount to be determined

according to proof at trial, in an amount in excess of $100,000.00 not including

attorney fees, interest and other costs.

**FOURTH CLAIM FOR RELIEF**

**4.  BREACH OF CONTRACT/IMPLIED COVENANT OF GOOD
FAITH AND FAIR DEALING**

127.    Plaintiffs incorporate each paragraph above into this claim.

128.    A contract existed between CORE HOLDINGS and its wholly

owned subsidiaries and Defendant Rocho. (See Exhibit A),

129.    Pursuant to the contract, Plaintiffs expected Defendant Rocho

would:

      a.  Comply with his fiduciary duties.

b.  Perform his professional obligations without impairing Plaintiffs'
     business.

c.  Not convert Plaintiffs' property, opportunities, interests, and
     expectancies for his personal use.

130.    Defendant Rocho denied CORE HOLDINGS, and its wholly owned
subsidiaries, these expected benefits of the contract by his misappropriation of
CORE HOLDINGS', and its wholly owned subsidiaries', property, opportunities,
interests, and expectancies.

131.    Defendant Rocho breached his contract, as well as the implied
covenant of good faith and fair dealing that is implied into every contract under
Arizona law, with CORE HOLDINGS, and its wholly owned subsidiaries, by:

a.   disclosing confidential information,

b.  inducing, influencing, or encouraging any existing or prospective
     customer, supplier or other business partner of the Plaintiffs for
     purposes of diverting their business or services from the Plaintiffs,

c.  reducing or limiting Plaintiffs' intellectual property rights for work
     made for hire,

d.  converting Plaintiffs work product, and

e.  engaging in activities that are competitive with the activities or
     potential activities of the Plaintiffs.

132.    As a direct result of Defendant Rocho's improper breach of contract
and implied covenant of good faith and fair dealing, Plaintiffs have been injured.

133.   Due to Defendant Rocho's breach of contract and implied covenant of good faith and fair dealing, Plaintiffs incurred damages, in an amount to be proven at trial, more than $100,000.00, not including attorney fees, interest and other costs.

### FIFTH CLAIM FOR RELIEF
### 5. NEGLIGENT MISREPRESENTATION

134.   Plaintiffs incorporate each paragraph above into this claim.

135.   Defendant Rocho either provided CORE HOLDINGS, and its wholly owned subsidiaries, with false or incorrect information, or omitted or failed to disclose material information.

136.   Defendant Rocho intended CORE HOLDINGS, and its wholly owned subsidiaries, to rely on the false or incorrect information provided and Defendant Rocho provided it for that purpose.

137.   Defendant Rocho failed to exercise reasonable care or competence in obtaining or communicating false or incorrect information and omitting for failing to disclose material information when the initial investment was made in Third-Party MATTERFI and he failed to disclose his pecuniary interest in the transaction.

138.   CORE HOLDINGS, and its wholly owned subsidiaries, justifiably relied on Defendant Rocho's false or incorrect information.

139.   As a result of Defendant Rocho's false or incorrect information and omission of material facts, CORE HOLDINGS, and its wholly owned subsidiaries,

were damaged in an amount to be proven at trial, in an amount more than

$100,000.00 not including attorney fees, interest and other costs.

## SIXTH CLAIM FOR RELIEF

### 6. FRAUD

140.    Plaintiffs incorporate each paragraph above into this claim.

141.    Defendant Rocho made repeated false representations regarding his interest in MATTERFI to the agents of CORE HOLDINGS, and its wholly owned subsidiaries.

142.    Defendant Rocho's representations were material because they were sufficiently important to influence a reasonable person's action.

143.    Defendant Rocho knew his representations were false.

144.    Defendant Rocho intended that Plaintiffs' agents would act upon the representation in the manner reasonably contemplated by Defendant Rocho.

145.    Plaintiffs' agents were not fully aware of the false representations or fully aware of their falsity.

146.    Plaintiffs and/or Plaintiffs' agents relied on the truth of Defendant Rocho's representations and their reliance was justified under the circumstances.

147.    As a result of Defendant Rocho's material misrepresentations, Plaintiffs were damaged in an amount to be proven at trial, in an amount in excess of $100,000.00 not including attorney fees, interest and other costs.

## SEVENTH CLAIM FOR RELIEF

COMPLAINT

## 7. <u>CONSTRUCTIVE FRAUD</u>

148. Plaintiffs incorporate each paragraph above into this claim.

149. Defendant Rocho had a fiduciary duty to Plaintiffs CORE HOLDINGS, and its wholly owned subsidiaries.

150. Defendant Rocho represented that he was acquiring interest in Third-Party MATTERFI for Plaintiffs for the initial investment made by Plaintiffs through the Class "A" Common Stock Purchase Agreement.

151. Defendant Rocho failed to make a full and truthful disclosure of all facts to Plaintiffs because Defendant Rocho did not fully disclose the fact that he received an interest in Third-Party MATTERFI in the form of founders stock.

152. Defendant Rocho misrepresented and concealed facts from Plaintiffs.

153. Defendant Rocho's conduct deceived Plaintiffs.

154. Defendant Rocho's conduct constitutes constructive fraud.

155. The willful and intentional fraud, as set forth in this complaint is of such an aggravated or outrageous nature to indicate motive and willful misconduct.

156. Defendant Rocho's fraud has damaged Plaintiffs in an amount to be proven at trial, in an amount in excess of $100,000.00 not including attorney fees, interest and other costs and Plaintiffs are entitled to an award of exemplary damages based on the inappropriate and willfully fraudulent conduct of Defendant Rocho.

**EIGHTH CLAIM FOR RELIEF**

**8.  CONVERSION**

157.   Plaintiffs incorporate each paragraph above into this claim.

158.    Plaintiffs had a right to possess the founders stock in MATTERFI that was misappropriated by Defendant Rocho.

159.   Defendant Rocho intentionally exercised dominion and control over Plaintiffs property.

160.   Plaintiffs were deprived possession or use of the property misappropriated by Defendant Rocho.

161.   Defendant Rocho misappropriation damaged Plaintiffs in an amount to be proven at trial, in an amount in excess of $100,000.00 not including attorney fees, interest and other costs.

**NINTH CLAIM FOR RELIEF**

**9.  NEGLIGENCE**

162.   Plaintiffs incorporate each paragraph above into this claim.

163.   Defendant Rocho owed a duty to use reasonable care, skill, and diligence in the performance of his duties and was negligent in, but not limited to, the following manner:

    a.  Failing to acquire Third-Party MATTERFI intellectual property on behalf of the Plaintiffs;

    b.  Failing to fully disclose his interest in Third-Party MATTERFI, acquiring 18.64% founders stock, to Plaintiffs; and/or

COMPLAINT

c.  Failing to negotiate favorable terms for Plaintiffs in the transaction making the initial investment in Third-Party MATTERFI.

164.  Defendant Rocho's acts and/or omissions constitute a failure to use due care as described above resulting in a breach of his duty.

165.  Defendant Rocho's failure to use care was the proximate and producing cause of Plaintiff's damages as described more thoroughly herein.

166.  Defendant Rocho is liable to Plaintiffs for damages as a direct result of Defendant Rocho's negligence.

167.  Plaintiffs are entitled to damages in an amount to be shown according to proof at time of trial, in an amount more than $100,000.00 not including attorney fees, interest and other costs.

## **TENTH CLAIM FOR RELIEF**
### **10. GROSS NEGLIGENCE**

168.  Plaintiffs incorporate each paragraph above into this claim.

169.  As alleged herein, Defendant Rocho received founders stock in a competitor Third-Party MATTERFI without fully disclosing to Plaintiffs to whom he owed a duty of care to as an Officer of the company. Defendant Rocho's acts and/or omissions are of such character to rise to the level of gross negligence.

170.  The acts or omissions of Defendant Rocho were carried out with a conscious disregard for the rights of the Plaintiffs and with actual awareness on the part of Defendant that his acts would, in reasonable probability, result in damages to the Plaintiffs.

**COMPLAINT**

171.   As further alleged herein, Defendant Rocho's conduct constitutes a want of even scant care and an extreme departure from the ordinary standard of conduct. Such contemptible lack of care represents an extreme departure from the ordinary standard of conduct in the context to the situation.

172.   Defendant Rocho's grossly negligent conduct resulted in damages to Plaintiffs.

173.   As a direct and proximate result of Defendant Rocho's grossly negligent conduct, Plaintiffs are entitled to recover compensatory damages in an amount according to proof at time of trial, in an amount in excess of $100,000.00 not including attorney fees, interest and other costs.

## ELEVENTH CLAIM FOR RELIEF
### 11. UNJUST ENRICHMENT

174.   Plaintiffs incorporate each paragraph above into this claim.

175.   Defendant Rocho derived compensation, stock and other benefits from CORE HOLDINGS, and its wholly owned subsidiaries, and was otherwise unjustly enriched for his management of CORE HOLDINGS, and its wholly owned subsidiaries, during the time in which the wrongful practices occurred, to the detriment of CORE HOLDINGS, and its wholly owned subsidiaries.

176.   Defendant Rocho profited by engaging in the wrongful conduct set forth above. Most prominently, Defendant Rocho is scheduled to make several millions of dollars in unjust profits from his attainment of 18.64% Class "A" Common Stock in Third-Party MATTERFI.

177.   These profits should not be held or retained by the Defendant Rocho and should be disgorged back to CORE HOLDINGS, and its wholly owned subsidiaries.

178.   Defendant Rocho's enrichment is directly and causally related to the detriment of CORE HOLDINGS, and its wholly owned subsidiaries.

179.   These benefits were accepted by Defendant Rocho under such circumstances that it would be inequitable for them to be retained without payment.

180.   Defendant Rocho voted and approved the initial investment in Third-Party MATTERFI for no other purpose than to reap the profits of the stock Defendant Rocho acquired without full disclosure.

181.   As alleged above, Defendant Rocho breached his fiduciary duties and/or abused his positions of control to CORE HOLDINGS, and its wholly owned subsidiaries. Therefore, Defendant Rocho is not justified in retaining the benefits conferred upon him.

182.   Plaintiffs allege this claim as an alternative in the event they are without remedy at law.

183.   The acts of Defendant Rocho were done maliciously, oppressively, and with intent to defraud.

184.   Plaintiffs are entitled to damages in an amount to be shown according to proof at time of trial, in an amount more than $100,000.00, not including attorney fees, interest and other costs.

**COMPLAINT**

**TWELFTH CLAIM FOR RELIEF**

**12. REQUEST FOR INJUNCTION**

185.    Plaintiffs incorporate each paragraph above into this claim.

186.    Pursuant to A.R.S 12-1801, the Court has the authority to grant injunctive relief.

187.    Plaintiffs CORE HOLDINGS, VAULT LOGIC, CORE SOFTWARE, and CAPITAL HERO have suffered irreparable injury or there is a substantial likelihood they will continue to suffer substantial irreparable injury as a result of Defendant Rocho's fraud and repeated false representations regarding his conduct in acquiring an interest in MATTERFI.

188.    Defendant Rocho's possession of 18.64% founders stock in Third-Party MATTERFI is illegal criminal activity in violation of Arizona and Federal Law.

189.    Defendant Rocho is currently in negotiations to convert and/or misappropriate this founders stock in Third-Party MATTERFI if he is not enjoined from doing so.

190.    Plaintiffs have no adequate remedy at law to protect their interests in Third-Party MATTERFI if the illegal actions of Defendant Rocho are not restrained.

191.    The sale of the 18.64% founders stock Defendant Rocho illegally acquired would constitute an irreparable injury, with incalculable damages for Plaintiffs.

192.     WHEREFORE, Plaintiffs pray that the Court enter a temporary restraining order and permanent injunction against Defendant Rocho ordering the following:

    a.   That Defendant Rocho shall immediately surrender possession of the 18.64% founders stock in Third-Party MATTERFI.

    b.   That Defendant Rocho shall not assert any interest in Third-Party MATTERFI.

    c.   That Defendant Rocho does not interfere with the ongoing business between Plaintiffs and Third-Party MATTERFI.

    d.   That this Court order any other equitable relief deem warranted and equitable under the circumstances.

## PUNITIVE DAMAGES

193.     Plaintiffs incorporate each paragraph above into this claim.

194.     Defendant Rocho engaged in conduct, acts, and omissions to serve his own interest and pursued a course of conduct having reason to know of, yet consciously disregarding a substantial risk that such conduct might significantly injure the rights of Plaintiffs.

195.     The willful and intentional acts, as set forth in this complaint are of such an aggravated or outrageous nature to indicate motive by an evil and corrupt mind, coupled with an evil and corrupt hand.

196.    A punitive damages award against Defendant Rocho in an amount to be proven at trial is fully justified and warranted and would have the effect of deterring others from committing similar acts or omissions.

## **PRAYER FOR RELIEF**

WEREFORE, Plaintiffs pray for judgment against Defendant Rocho as follows:

(a) Awarding damages against Defendant Rocho in an amount to be proven at trial;

(b) Awarding a preliminary and/or permanent injunction precluding Defendant Rocho from exercising or selling the misappropriated stock he received in Third-Party MATTERFI;

(c) Awarding restitution, disgorgement of all illicit proceeds generated as a result of the wrongful conduct alleged herein, and punitive damages;

(d) Awarding pre-judgment interest, as well as reasonable attorneys' fees and other costs;

(e) For punitive damages to be consistent with proof in this action; and

(f) Awarding such other relief as this Court may deem just and proper.

Dated: December 30, 2021

COMPLAINT

1

2

3          /s/ Stephen A. Crane Jr.

4          Stephen A. Crane Jr. (*pro hac vice pending*)

               Email: stevecranejr@gmail.com

5          **CRANE LAW PLLC**

6          7 West Square Lake Road

               Bloomfield Hills, Michigan 48302

7          Phone: 248.963.6300

8          Fax: 248.928.2286

9

10         Emmanuel Rayes (*pro hac vice pending*)

11        Email: emmanuel.rayes@gmail.com

             **RAYES LAW PLLC**

12        1450 2nd Street

13        Santa Monica, California 90401

14        Phone: 818.321.8568

             Fax: 586.261.5256

15

16        *Attorneys for Plaintiffs Core Holdings LLC*

             *Vault Logic, Inc., Core Software LLC,*

17        *and Capital Hero, Inc.*

18

19

20

21

22

23

24

25

26

27

28

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury of all issues which are subject to adjudication by a trier of fact.

Dated: December 30, 2021

/s/ Stephen A. Crane Jr.

Stephen A. Crane Jr. (*pro hac vice pending*)
Email: stevecranejr@gmail.com
**CRANE LAW PLLC**
7 West Square Lake Road
Bloomfield Hills, Michigan 48302
Phone: 248.963.6300
Fax: 248.928.2286

Emmanuel Rayes (*pro hac vice pending*)
Email: emmanuel.rayes@gmail.com
**RAYES LAW PLLC**
1450 2nd Street
Santa Monica, California 90401
Phone: 818.321.8568
Fax: 586.261.5256

*Attorneys for Plaintiffs Core Holdings LLC*
*Vault Logic, Inc., Core Software LLC,*
*and Capital Hero, Inc.*